IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Criminal No. 2:16-cr-68<br>BRIAN LEE GOFFIGAN, )<br>)<br>Defendant. ) | |

SENTENCING POSITION OF THE UNITED STATES

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and Kevin Hudson, Assistant United States Attorney, hereby submits its position with respect to the sentencing factors for defendant Brian Lee Goffigan. The government has one correction to paragraph sixteen of the Presentence Investigation Report ("PSR") (Document 30). The firearm used by CC1 in the incident described in paragraph sixteen was not the same firearm the defendant purchased and gave to CC1 in paragraph fifteen of the PSR. Aside from that, the government has no objections, additions or corrections to the PSR. The government will address the defendant's objections to the PSR below. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to two hundred twenty months in prison, which is on the upper end of the guidelines range.

## MOTION

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b), to grant an additional one-level reduction in the offense level for acceptance of responsibility if the Court finds that the two-level reduction pursuant to U.S.S.G. § 3E1.1(a) is appropriate.[1] The defendant

---

[1] The government notes that "falsely denying relevant conduct is inconsistent with acceptance of responsibility." United States v. Burns, 781 F.3d 688, 693 (4th Cir. 2015) (internal quotation marks omitted).

1

assisted authorities in the investigation and prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

## BACKGROUND

On May 4th, 2016 the federal grand jury sitting in Norfolk returned a one count indictment against the defendant (Document 14). That single count of the indictment charged the defendant with possession with intent to distribute twenty-eight grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On June 6th, 2016, the defendant entered a plea of guilty to an information charging him with possession with intent to distribute an unspecified weight of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Document 20). In addition, the government filed an information pursuant to 21 U.S.C. § 851 to establish a prior drug conviction (Document 21).

## UNRESOLVED OBJECTIONS

The defendant has made six objections to the presentence report, four of which have an effect on the calculation of the guidelines. First, the defendant objects to noting his brother, Quinn Goffigan, as a related case. The defendant's second objection is the reference to CC1 as a co-conspirator. Neither of the first two objections affects the guidelines. The defendant's third objection is to the role enhancement he received pursuant to U.S.S.G. § 3B1.1(c) for being a manager/supervisor. The defendant's fourth objection is to the firearm enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). The defendant's fifth objection is to the enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a drug-involved premises. The defendant's final objection is to his classification as a career offender pursuant to U.S.S.G. § 4B1.1. The government will address

each objection in turn.

I.      Quinn Goffigan as a Related Case

The PSR properly lists Quinn Goffigan, the defendant's brother, as a related case. While the government acknowledges that the defendant and his brother did not always sell drugs together, it would be equally inaccurate to say that there was no drug-involved nexus between the two. The PSR correctly indicates that the brothers used the same house in the Scarborough Square neighborhood to distribute crack cocaine. The PSR further shows that the defendant obtained crack cocaine from his brother on at least one occasion. CC1 was also a drug-involved link between the defendant and his brother. The government's evidence would further show that it was well known among those involved with crack cocaine in Virginia Beach that if Quinn Goffigan could not be reached, the next person to contact was the defendant. While Quinn Goffigan and the defendant has separate sources of supply, they would sometimes obtain cocaine base from one another when their primary sources were not available. As such, the defendant's brother, Quinn Goffigan, is appropriately listed as a related case.

II.      The Reference to CC1 as a Co-Conspirator

Like the objection to listing Quinn Goffigan as a related case, this objection does not affect the calculation of the sentencing guidelines. The PSR contains sufficient evidence such that CC1 could be considered a co-conspirator. The PSR reflects that the defendant purchased a firearm following an attempt to rob him. The government's evidence would be that this robbery was a drug-related incident. Shortly after purchasing the firearm, the defendant gave the gun to CC1. Just two days after the attempt to rob the defendant, CC1 shot at some people believed to be involved with the drug-related robbery of defendant. To be clear, Virginia Beach detectives have recently learned that the firearm used by CC1 in this incident was **not** the same firearm the

defendant gave him. Still, the shooting was in retaliation for the attempted drug-related robbery of the defendant. Even worse, CC1 ended up murdering an innocent bystander in this shooting incident. Not only is the above information sufficient to consider CC1 a co-conspirator, it may be sufficient to give the defendant an enhancement for directing violence under U.S.S.G. § 2D1.1(b)(2).[2]

III.    Role Adjustment

The PSR gives the defendant a two level increase for being a manager or supervisor pursuant to U.S.S.G. § 3B1.1(c). In determining whether a defendant meets the criteria for being a manager or supervisor, the Court should consider such factors as: (1) the exercise of decision making authority; (2) the nature of the participation in the offense; (3) the recruitment of accomplices; (4) the claim to a larger share of the proceeds; (5) the degree of participation in planning or organizing the criminal conduct; (6) the nature and scope of the criminal conduct; and (7) the degree of control and authority exercised over others. United States v. Sayles, 296 F.3d 219, 224 (4th Cir. 2002) (citing U.S.S.G. § 3B1.1, cmt. n. 4). To be a manager or supervisor, the defendant must direct the activities of others. See, e.g., United States v. Turner, 319 F.3d 716, 725 (5th Cir. 2003) (affirming manager increase where defendant directed others). Role determination is not only based on the defendant's role in the offense of conviction, rather it takes all relevant conduct into account. United States v. Houdersheldt, 395 Fed.Appx. 66, 68 (4th Cir. 2010). The defendant does not need to be in charge of a minimum number of participants in order to receive the two level enhancement under U.S.S.G. § 3B1.1(c). United States v. Harriott, 976 F.2d 198, 200 (4th Cir. 1992) (role enhancement affirmed where defendant drove a single "drug mule" from New York to Virginia to deliver crack cocaine). The

---

[2] To be clear, the government is not objecting to the Probation Office not giving the directing violence enhancement.

defendant easily meets the above criteria for being a manager or supervisor.

The PSR reveals at least two people over whom the defendant served as a manager or supervisor. The circumstances described above with respect to CC1 strongly suggest that CC1 went looking for those who robbed the defendant at the defendant's behest. The defendant's own statement of facts in this case reveals a second person the defendant managed—the female who was driving him around while he served crack cocaine customers. United States v. Beaufort, 334 Fed.Appx. 584, 586 (4th Cir. 2009) (affirming role increase where drug dealer defendant used a driver and a delivery person); United States v. Puzey, 73 Fed.Appx. 549, 553 (4th Cir. 2003) (affirming role increase where, among other factors, defendant had people act as runners). The government's evidence would further show that the defendant attempted to recruit a third person into his crack cocaine dealing operations. Specifically, the defendant approached the third person about using the person's house as a new base of operations for selling crack cocaine. United States v. Lara, 546 Fed.Appx. 189, 190 (4th Cir. 2013) (affirming role increase where, among other factors, defendant recruited accomplices). Based on the above information, the evidence is more than sufficient to give this defendant a two-point role enhancement under U.S.S.G. § 3B1.1(c).

IV.     The Firearm Enhancement

The defendant objects to receiving a firearm enhancement under U.S.S.G. § 2D1.1(b)(1). The application notes to U.S.S.G. § 2D1.1(b)(1) provide that:

> The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

The Fourth Circuit has also addressed the firearm possession enhancement and its cases provide some guidance on when the application of the enhancement is warranted. Compare United

5

States v. Moseley, 626 Fed.Appx.399, 402 (4th Cir. 2015) (enhancement appropriate where a 9mm handgun and magazine were found in the bedroom of the same home where the defendant committed his drug offense) and United States v. Manigan, 592 F.3d 621, 631-32 (4th Cir. 2010) (enhancement affirmed where two handguns were seized from the defendant's residence, which was the focal point of defendant's drug activity) and United States v. Harris, 128 F.3d 850, 852-53 (4th Cir. 1997) (enhancement appropriate where unloaded firearm was found in the same drawer as the drugs at issue) with United States v. Duffy, 30 Fed.Appx. 240, 249-50 (4th Cir. 2002) (enhancement not warranted where guns were found at defendant's home a year after the conspiracy ended, but drugs were only sold at defendant's business, where no guns were found) and United States v. McAllister, 272 F.3d 228, 234 (4th Cir. 2001) (enhancement inappropriate where the evidence failed to show the circumstances of the firearm possession). The Fourth Circuit has noted that the firearm possession enhancement "does not require proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs, drugs in hand while in the act of retrieving a gun." Harris, 128 F.3d at 852 (quoting United States v. Johnson, 943 F.2d 383, 386 (4th Cir. 1991)). See also Manigan, 592 F.3d at 629 (for the same proposition). Rather, "the Government must prove by a preponderance of the evidence that the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." Manigan, 592 F.3d at 628-29. The government need not show that the defendant himself possessed a firearm, rather it is sufficient to show that it was reasonably foreseeable to the defendant that his co-conspirator would possess a firearm. United States v. Marby, 576 Fed.Appx. 155, 156 (4th Cir. 2014) (citing United States v. Kimberlin, 18 F.3d 1156, 1159-60 (4th Cir. 1994)).

    In this case, the facts warrant the firearm enhancement under U.S.S.G. § 2D1.1(b)(1). As

described above, the defendant purchased a firearm after being the subject of a drug-related robbery. Within days of purchasing the gun, the defendant gave that gun to CC1. CC1 quickly sought out those believed to be involved in the robbery of the defendant. Upon seeing those thought to be responsible for the robbery, CC1 shot at them, though CC1 did so with a different firearm than the one the defendant provided him. CC1 ended up missing the robbers and instead murdering an innocent bystander. As such, a firearm was not only in the possession of the defendant himself in furtherance of the same course of conduct to which he has pled guilty in this Court, it was also foreseeable to the defendant that CC1 would possess (and use) a firearm in furtherance of the drug trafficking. Even though CC1 did not use the gun the defendant provided to shoot at the men who robbed the defendant, the fact that the defendant provided CC1 with a gun made CC1's possession of a firearm in furtherance of the drug trafficking scheme foreseeable. Under these circumstances, it cannot be said that it is clearly improbable that the weapon was connected with the offense. The defendant should therefore receive the enhancement for the firearm under U.S.S.G. § 2D1.1(b)(1).

V.   <u>Maintaining a Drug-Involved Premises</u>

The Fourth Circuit has summarized the criteria for determining whether an enhancement under U.S.S.G. § 2D1.1(b)(12) is appropriate as follows:

> U.S.S.G. § 2D1.1(b)(12) provides that if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase the offense level by 2 levels. According to the Guidelines commentary, among the factors the court should consider in determining whether the defendant maintained the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises. The commentary makes clear that a premises need not be an actual house or residence, but may be a building, room, or enclosure. Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises.

United States v. Christian, 544 Fed.Appx. 188, 190-91 (4th Cir. 2013). The Court in the Christian case went on to affirm the District Court's finding that the drug-involved premises enhancement was warranted for a defendant who occasionally stayed at an apartment in which he kept a safe full of cash, drugs, guns and paraphernalia. The defendant in Christian also frequently traveled between the apartment and the place where he sold drugs.

In the case at bar, the house in Scarborough Square was not simply a base of operations for the defendant's crack cocaine sales, it was the site of those sales. Storing drugs in a house and conducting drug transactions out of a house is conduct sufficient to warrant the drug-involved premises enhancement. See, e.g., United States v. Messer, ---Fed.Appx.---, 2016 WL 3971727, at *2 (4th Cir. July 25, 2016) (affirming enhancement where defendant stored drugs, drug proceeds, and guns in a barn and "at least sometimes conducted drug transactions in the barn"). The enhancement should therefore be given in this case.

VI.   The Career Offender Classification

The defendant's sixth and final objection to the PSR concerns his classification as a career offender under U.S.S.G. § 4B1.1. This objection is a narrow one—the defendant disputes that robbery under Va. Code § 18.2-58 constitutes a crime of violence for the purposes of the career offender provisions of the Guidelines. Both the Guidelines themselves and the case law make clear that the defendant's position is incorrect. The application notes for U.S.S.G. § 4B1.1 references the definition of crime of violence found at U.S.S.G. § 4B1.2. The application notes associated with U.S.S.G. § 4B1.2 provide a list of offenses included within the category of crime of violence. One of the offenses listed in the application note to U.S.S.G. § 4B1.2 is robbery.[3]

---

[3] Another offense listed among the crimes of violence in the application note to U.S.S.G. § 4B1.2 is kidnapping, of which this defendant has also previously been convicted.

The case law conforms to that application note. See, e.g., United States v. Winston, No. 3:01-cr-79, 2016 WL 3963234 (W.D.Va. July 21, 2016) (holding that robbery under Virginia state law is a violent felony for the purposes of the Armed Career Criminal Act and analyzing the issue in light of the Fourth Circuit's opinion in United States v. Gardner, 823 F.3d 798 (4th Cir. 2016) (holding that common law robbery under North Carolina law is not a violent felony for ACCA purposes)); Muse v. United States, ---F.Supp.3d---, 2016 WL 3387172, at *2 (E.D.Va. June 8, 2016) ("given this prior felony conviction for Virginia robbery and another prior felony conviction for a drug offense, the Petitioner undoubtedly qualified as a career offender under U.S.S.G. § 4B1.1(a), without using the residual clause definition for 'crime of violence' in § 4B1.2(a)"). In light of the above, the defendant has been properly categorized as a career offender.

## POSITION ON SENTENCING AND ARGUMENT

Following the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), a District Court imposing sentence engages in a multi-step process. "A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." United States v. Green, 436 F.3d 449, 456 (4th Cir. 2006) (quoting United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005)). As to findings of fact, the party objecting to those findings in the PSR has a burden to come forward with an affirmative showing to the contrary. United States v. Love, 134 F.3d 595, 606 (4th Cir.), cert. denied, 524 U.S. 932 (1998). Courts next determine whether a sentence within that guideline range serves the factors set out in 18 U.S.C. § 3553(a). If not, the Court should select a sentence that does serve the § 3553(a) factors. Green, 436 F.3d at 456. The Court must also articulate its rationale for selecting a particular sentence, especially where that sentence is outside the applicable guidelines range. Id. Accord United States v.

Helton, 782 F.3d 148, 152 (4th Cir. 2015) (citing Green). The government has already discussed the proper calculation of the applicable guidelines range in the unresolved objections section above, therefore the government will focus here on the § 3553(a) factors as applied to this defendant.

Before the Court is a thirty-seven year old man who has been involved in selling crack cocaine since he was fourteen years old. The defendant's criminal record begins at age thirteen with an assault conviction. The defendant's crack cocaine dealing conviction came just four months after that assault conviction and caused the Juvenile and Domestic Relations Court to commit the defendant to the Department of Juvenile Justice. The government notes that the defendant's juvenile crack cocaine dealing conviction arose from him bringing sixteen bags of crack cocaine to a middle school. Less than a year after that incident, the defendant was again caught with crack cocaine.

As the defendant became an adult, he continued to get in trouble frequently. While some of his earlier adult convictions were misdemeanors, the frequency of those offenses plainly show a lack of respect for the law. In the two and a half year period from August 1997 to February 2000, the defendant was sentenced thirteen times for misdemeanor offenses ranging from domestic assault and battery, to failure to appear, to trespassing, to serious traffic offenses. In September 2000, the defendant was arrested for possession with intent to distribute crack cocaine. Despite his already lengthy criminal record at that point, including a history of failing to appear, the defendant was given a bond. The defendant managed to get by for a little under two months on bond before being arrested for his involvement in a crack-related robbery. The PSR shows that the defendant and two associates entered the home of one of the defendant's crack cocaine customers. One of the co-conspirators was armed with a gun. The defendant and

his co-conspirators demanded money from the crack customer, who refused, prompting the defendant and an associate to strike the customer in the face. Based on that incident, the defendant was later convicted of robbery, abduction, conspiracy to rob, and use of a firearm in the commission of a felony. The defendant was not given a bond following his arrest in early November 2000 following the violent, drug-related home invasion robbery. The PSR shows that the defendant was released from the Virginia state penitentiary in October 2012, having served nearly twelve years. Indeed, this defendant is a career offender in the truest sense of the term.

Instead of becoming gainfully employed after his release, in late 2012 the defendant went back to selling crack cocaine in fairly short order. The PSR indicates that the defendant began dealing crack cocaine again sometime in 2013. The defendant's meager employment history is a sharp contrast to the defendant's extensive criminal record, described above. The PSR reveals that, at most, the defendant has been employed for a few months since the turn of the millennium. This will, however, be the third time this defendant has appeared before a Court for sentencing arising from his crack cocaine dealing. Given that nearly twelve years in the penitentiary only stopped the defendant from selling drugs for less than a year, a considerably longer sentence is warranted now.

The defendant told the Probation Office that "his life went wayward because he got caught up in the street life" (Document 29, ¶ 84). The defendant withdrew from school in the sixth grade, presumably following his arrest for selling crack cocaine at his middle school. The PSR shows that the defendant had plenty of negative influences in his life. The defendant has two family members in prison, another family member who is a former crack cocaine addict, and two family members who were murdered. The PSR indicates that the defendant has been abusive in relationships. The defendant has a total of three protective orders outstanding against

him.

Given the defendant's lifelong involvement in selling crack cocaine, his lack of respect for the law as evidenced by his numerous prior convictions, his history of violent crime, his apparent connection to a retaliatory shooting where an innocent bystander was murdered, and the defendant's lack of willingness to work or to be rehabilitated, the government would respectfully urge the Court to sentence the defendant to two hundred twenty months in prison.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

By:    \_\_\_/s/ Kevin Hudson_____
Kevin Hudson
Assistant United States Attorney
Virginia State Bar No. 81420
Attorney for the United States
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: (757) 441-6331
Facsimile Number: (757) 441-6689
Email Address: kevin.hudson@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of October 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of the filing (NEF) to all counsel of record.

By:    /s/ Kevin Hudson
Kevin Hudson
Assistant United States Attorney
Virginia State Bar No. 81420
Attorney for the United States
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: (757) 441-6331
Facsimile Number: (757) 441-6689
Email Address: kevin.hudson@usdoj.gov